JUDGE DAVID GUADERRAMA

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

JOSHUA CACHO, a Texas resident,

Plaintiff,

v.

ACA EXPERTS, LLC, a Texas Limited Liability Company,

Defendants.

EP23CV0456

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff JOSHUA CACHO ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for the last two calls in this Complaint, in this case in El Paso County, Texas.

2. Defendant ACA EXPERTS, LLC ("ACA") is a Limited Liability Company organized and existing under the laws of Texas and can be served via registered agent John Richard Holmes at 17510 Stoney Rise Ln Humble, Texas 77346, United States.

3. Unnamed Party WILLIAM BAILEY ("William") is an employee of Defendant ACA.

### JURISDICTION AND VENUE

4. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

1

## PERSONAL JURISDICTION

5. This Court has general personal jurisdiction over Defendant ACA because Defendant is a Texas Limited Liability Company.

## VENUE

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District, and Defendant ACA is a Texas Limited Liability Company.

7. This Court has venue over Defendant ACA because the calls at issue were sent by or on behalf of the above-named Defendant to Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13.     The TCPA provides a private cause of action to persons who receive calls in violation of 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

14.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

**17.** *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

**18.** The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

**19.** Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

**20.** The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *Id.* at § 227(a)(1)

**21.** As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

22.     Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a salesperson is available to take the call.

23.     In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."

24.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

25.     The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of

Texas or to residents located in Texas.

**26.** The Plaintiff may seek damages of violations of Texas Business and Commerce Code § 302.101 of to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs investigation costs, depositions expenses, witness fees, and attorney's fees.

**27.** Texas Business and Commerce code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading or deceptive act of practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right of remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

**28.** The use or employment by any person of a false, misleading, or deceptive act or practice causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50

## FACTUAL ALLEGATIONS

**29.** Plaintiff's personal cell phone ending in 7208 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first call received from ACA's agents.

**30.** Plaintiff personally registered the cell phone at issue in this case on the National-Do-Not-Call Registry on August 05, 2022.

**31.** Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

**32.** Defendant ACA operates as a health insurance sales company.

**33.** Call #1, on August 17, 2023, at 8:47 AM MT Plaintiff received a call on his personal cell phone with 302-514-1538 appearing on his Caller ID. Plaintiff answered the phone and was

greeted by an agent of Defendant ACA stating they were calling from, "ACA Free Healthcare Assistance Team" and claimed to be working with the government.

34. Plaintiff told Defendant ACA's agent that he was not interested and to not call back.

35. Call #2, on October 09, 2023, at 1:46 PM MT Plaintiff received a call on his personal phone with 469-625-4610 appearing on his Caller ID. Plaintiff answered the phone and was greeted by an agent of Defendant ACA stating they were calling from, "ACA Free Healthcare Assistance Team" and claimed to be working with the government. Plaintiff again told them to stop calling.

36. Calls #3-4, on October 17, 2023, and October 26, 2023, Plaintiff received two (2) calls from Defendant ACA's agents calling from, "ACA Free Healthcare Assistance Team" and claiming to be working with the government. Plaintiff hung up on both calls described above after hearing what they were calling about.

37. Call #5, on November 3, 2023, at 11:43 AM MT Plaintiff received a call on his personal phone with 346-338-18812 appearing on his Caller ID. Plaintiff answered the phone and was greeted by an agent of Defendant ACA stating they were calling from, "ACA Free Healthcare Assistance Team" and claimed to be working with the government.

38. Plaintiff handed the phone to a friend who was of age for the purpose of identifying the party responsible for the calls. Plaintiff's friend went through the process with Defendant ACA's agent and was sent multiple emails from them confirming ACA as the party responsible for the calls.

39. Defendant called from various spoofed caller identification numbers in an effort to confuse Plaintiff as to the origin of the phone calls.

40. Table A below displays the calls received from Defendant ACA and their affiliates.

TABLE A

| NO. | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | Aug 17, 2023 | 8:47 AM | (302) 514-1538 | Unauthorized call from ACA - DNC Request #1 |
| 2 | Oct 09, 2023 | 1:46 PM | (469) 625-4610 | Unauthorized call from ACA - DNC Request #2 |
| 3 | Oct 26, 2023 | 4:09 PM | (585) 312-1967 | Unauthorized call from ACA - Hung up |
| 4 | Nov 02, 2023 | 9:29 AM | (701) 419-4182 | Unauthorized call from ACA - Hung up |
| 5 | Nov 03, 2023 | 11:43 AM | (346) 338-1881 | Unauthorized call from ACA - Received email confirming ACA |

41. Plaintiff did not have an established business relationship with Defendant ACA, nor did Plaintiff consent to the calls sent to his personal phone.

42. Each and every solicitation call from Defendant ACA after August 17, 2023, was a knowing and willful violation of the TCPA as Plaintiff had Delivered a DNC request to Defendant ACA on August 17, 2023.

43. Each and every call phone call between October 09, 2023, and November 03, 2023, was a knowing and willful violation as Plaintiff had informed Defendant ACA's agents he wasn't interested and to stop calling multiple times.

44. Plaintiff made numerous DNC Requests to Defendant ACA's agents that went ignored.

45. Plaintiff did not provide his phone number to Defendant ACA or their agents at any point.

46. Upon information and belief, Defendant ACA did not have a written do-not-call

policy while their telemarketers were sending Plaintiff the calls.

**47.**    Upon information and belief, Defendant ACA did not train their employees who engaged in telemarketing on the existence and use of any do-not-call list.

**48.**    Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3) (requiring telemarketers to honor and record DNC requests when made).

**49.**    Defendant knew or should have known that its conduct would violate the TCPA and its regulations because Defendant ACA operates in a highly regulated telephone solicitation industry.

**50.**    ACA knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violated the TCPA and its regulations.

**51.**    Defendant knew or should have known the requirements for making TCPA, FTSA, and Texas sales-compliant telemarketing calls and thus knew or should have known that the unauthorized telemarketing calls and the many disregarded DNC requests complained of herein violated the TCPA, and Texas Business Commerce Code 302.101 and all of their regulations.

**52.**    No emergency necessitated these calls.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

**53.**    Defendant ACA's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

**54.**    Defendant ACA's calls harmed Plaintiff by trespassing upon and interfering with

Plaintiff's rights and interests in Plaintiff's cellular telephone.

55. Defendant ACA's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

56. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

### PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

57. The calls were to Plaintiff's cellular phone number 713-955-7208 which is Plaintiff's personal phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phones registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### CAUSES OF ACTION:

### COUNT ONE:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

58. 7Plaintiff incorporates the preceding paragraphs 1-57 as if fully set forth herein.

59. Defendant ACA's agents called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**60.**     Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by Defendant ACA by the telemarketing calls described above, in the amount of $500.00 per call.

**61.**     Plaintiff was further statutorily damaged because Defendant ACA willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

**62.**     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT TWO**
**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**

**63.**     Plaintiff incorporates the preceding paragraphs 1-57 as if fully set forth herein.

**64.**     Defendant and/or their affiliates or agents made at least five (5) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.

**65.**     As a result of Defendant's and/or their affiliates or agent's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code 302.302(a).

**66.**     As a result of Defendant's and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees. Tex. Bus. and Com. Code 302.302(d

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendant ACA as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C §227(c) intentional violations jointly and severally against the corporations for 5 calls.

C.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for five (5) calls

D.      An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

E.      Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

December 18, 2023,                          Respectfully

*[signature]*

Joshua Cacho
Plaintiff, Pro Se
PO Box 26971
El Paso, Texas 79926
713-955-7208

12